IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SAMUEL RIVERA-CUEVAS,

    Plaintiff,

        v.                                  CIVIL NO.: 11-1295 (MEL)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Samuel Rivera-Cuevas ("plaintiff" or "claimant"), born January 23, 1966, completed the equivalent of a high school education[1] and worked as a handyman from 1988 to 2007. (Tr. 21, 247, 251, 261.) On July 17, 2007, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability due to depression and fractures in his hips and cranium. (Tr. 15, 246.) The alleged onset date of the disability was July 13, 2007; the end of the insurance period is December 31, 2012. (Tr. 17.) Plaintiff's application was denied initially as well as on reconsideration. (Tr. 15.) After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on January 21, 2009. (Tr. 25.) Plaintiff waived the right to appear and testify at the hearing. (Tr. 15.) On February 18, 2009, the ALJ rendered a decision denying plaintiff's claim. (Tr. 9.) The Appeals Council denied plaintiff's request for review on January 28, 2011; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). (Tr. 1.)

---

[1] Plaintiff completed his GED, which equates to a high school education, in January 2007. (Tr. 251, 261.)

On March 28, 2011, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that it was not based on substantial evidence. (Docket No. 1.) On August 4, 2011, defendant filed an answer to the complaint and a certified transcript of the administrative record. (Docket Nos. 6; 7.) Both parties have filed supporting memoranda. (Docket Nos. 16; 24.)

## II.   LEGAL STANDARD

### A.   Standard of Review

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Case 3:11-cv-01295-MEL   Document 25   Filed 09/20/12   Page 3 of 10

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B.     Disability Under the Social Security Act**

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42. If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed

3

to the next step. At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[2] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

---

[2] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

### III.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified medical record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions:

Plaintiff regularly had general medical appointments at APS Clinics of Puerto Rico between March 30, 2005, and November 11, 2008. (Tr. 127-68.) The record also includes progress notes from plaintiffs' general medical appointments at Grupo Medico del Noreste between July 11, 2006, and October 21, 2008. (Tr. 117-26, 169-77.)

Plaintiff was referred to Dr. Carmen L. Martínez-Cotto for a psychiatric evaluation by the Disability Determination Program of the Social Security Administration. (Tr. 111-16.) Dr. Martínez conducted the evaluation on October 2, 2007. The report states that plaintiff had a workplace accident in 2002, injured his lower back and dislocated his hips, and suffered cervical HNP and cranial base fracture. (Tr. 112); see also (Tr. 102-10.) The report also lists some of plaintiff's general activities; for example, plaintiff does chores daily, goes to church, and does not participate in other social activities. (Tr. 113.) Dr. Martínez also describes plaintiff's restricted affect and anxious mood. (Tr. 114.) Dr. Martínez notes that plaintiff is in good contact with reality and is oriented. Id. Plaintiff's immediate, short-term, and recent and remote memories are fair, poor, and good, respectively. (Tr. 114-15.) While plaintiff has poor attention span, he has good concentration. (Tr. 115.) Dr. Martínez notes that plaintiff has diminished social judgment and ability to persevere and adapt, and poor tolerance to frustration and insight. Id. Ultimately, Dr. Martínez diagnosed plaintiff with an adjustment disorder with depressed mood and determined that plaintiff was able to manage his funds. (Tr. 116.)

On October 16, 2007, plaintiff received a neurological evaluation from Dr. Trevor H. Grant regarding hip, neck, and back pain. (Tr. 319-26.) In the report, Dr. Grant concludes that

5

plaintiff "can still sit, stand, speak, hear, handle and travel," but had an "impairment of lifting and carrying." (Tr. 320.) Dr. Grant does not specify the extent of the impairment, but indicates that plaintiff has "5/5" muscle strength for both hands. (Tr. 319, 322.)

Dr. Idalia Pedroza, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment of plaintiff on November 6, 2007. (Tr. 329-37.) The assessment indicates that plaintiff was limited to occasionally lifting and/or carrying 50 pounds and frequently lifting and/or carrying 25 pounds. (Tr. 330.)

The record also contains a Psychiatric Review Technique form from Dr. Luis Umpierre, a state agency psychiatrist, from November 7, 2007. (Tr. 338-52.) The form indicates that plaintiff was experiencing no more than mild functional limitations and no extended episodes of decompensation. (Tr. 348.)

Finally, another state agency medical consultant, José Acuna,[3] completed a Physical Residual Functional Capacity Assessment of plaintiff on June 4, 2008. (Tr. 367-74.) Mr. Acuna determined that, although there were no significant changes in plaintiff's condition, the first assessment overestimated plaintiff's ability to lift or carry. (Tr. 368.) Rather, plaintiff was limited to occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds. (Tr. 368.)

## IV. LEGAL ANALYSIS

### A. Non-Exertional Limitations

Plaintiff argues that, despite the presence of significant non-exertional limitations, the ALJ erroneously used the Medical-Vocational Guidelines ("the Grid") at step five instead of calling a vocational expert. (Docket No. 16, at 7); see Victor M. Ortiz v. Sec'y of Health &

---

[3] The signature box of the Physical Residual Functional Capacity Assessment does not include "MD" after José Acuna's name, but the form still indicates that Mr. Acuna is a medical consultant with the code 1229.

Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Given the ALJ's conclusion of fact at step two that plaintiff had no severe non-exertional limitations, however, the use of the Grid was appropriate.[4]  (Tr. 17-18.)  Thus, plaintiff actually disagrees with the ALJ's step two determination.

The standard is whether the ALJ's determination that plaintiff had no severe non-exertional limitations was supported by substantial evidence.[5]  Important to this inquiry is plaintiff's objection that the ALJ did not consult a medical expert in making the determination that plaintiff did not have a severe mental impairment.  It is true that an ALJ is not qualified to "interpret raw data in a medical record."  Manso-Pizarro v. Sec'y of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  Plaintiff specifically objects to the ALJ's analysis of the four functional areas, arguing that it was not based on expert medical opinion. (Docket No. 16, at 4 n.3, 11-12); (Tr. 18.)  Relying on 20 C.F.R. § 404.1520a(d)(1), the ALJ concludes in his opinion that, because plaintiff had only "mild limitation" in the first three functional areas and experienced "no episodes" of extended decompensation, plaintiff's non-exertional limitation was not severe.  (Tr. 18.)  In making this step two determination, an ALJ must show the relevant "significant history" and "functional limitations," and "include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(4).  The support for each finding can be found later in the ALJ's opinion; for each functional area, the ALJ relied on the psychiatric report of Dr. Martínez or plaintiff's own function report for the Social Security Administration.  (Tr. 89, 113, 116.)  Plaintiff seems to object that the very process of conducting

---

[4] The purpose of the Grid is to assist the Commissioner in determining "the existence of other jobs in the national economy that the claimant can perform … in a streamlined fashion without resorting to the live testimony of vocational experts."  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).  If a non-exertional limitation "impose[s] no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Id.
[5] Plaintiff's arguments with respect to hand strength, lifting, and carrying—which pertain to exertional limitations—will be discussed infra Part IV(B).

an analysis of the functional areas without consulting a medical expert is an impermissible medical assessment.  See (Docket No. 16, at 11 n.8.)  But an ALJ is not required to call a medical expert to assist him in coming to conclusions for the functional areas, although he may if he requires one.  See 20 C.F.R. § 404.1520a(e)(5).

Plaintiff also argues that the assessment of Dr. Martínez contradicts Dr. Umpierre's evaluation and the ALJ's conclusions.  (Docket No. 16, at 11.)  Dr. Umpierre, relying in part on the records from Dr. Martínez, concludes that plaintiff experienced mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace.  (Tr. 348, 350.)  In contrast, plaintiff points to a wide variety of observations within Dr. Martínez's evaluation which seem to be inconsistent with Dr. Umpierre's conclusions.  (Docket No. 16, at 19.)

The ALJ, however, did not rely solely on Dr. Umpierre; he cited Dr. Martínez's evaluation frequently, pointing for example to plaintiff's abilities to conduct various daily and social activities, to maintain good eye conduct, to make simple decisions, and to handle funds.  (Tr. 19, 113-16.)  In fact, as mentioned earlier, the ALJ relied primarily on Dr. Martínez's observations, along with plaintiff's own function report, in making his determinations regarding plaintiff's functional areas.  (Tr. 18.)  Contrary to plaintiff's contention, the ALJ's opinion was not inconsistent with Dr. Martínez's evaluation; the ALJ simply concluded that the limitations that Dr. Martínez identified were no "more than minimal" with respect to "claimant's ability to perform basic mental work activities."  (Tr. 17.)  There is substantial evidence to support the ALJ's conclusion that the non-exertional limitations were not severe.

**B.     Exertional Limitations**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence.  (Tr. 18.)  The ALJ concludes in his opinion that plaintiff had two severe exertional

impairments: a disorder of the back and obesity; thus, plaintiff was limited to performing "light work."[6] (Tr. 17.) Plaintiff refers several times to Dr. Grant's assessment of plaintiff's "impairment of lifting and carrying."[7] (Tr. 320); (Docket No. 16, at 3, 9, 18.) According to the ALJ, while plaintiff was previously able to lift 50 or more pounds as a handyman, he can now only lift or carry occasionally up to 20 pounds and 10 pounds frequently. (Tr. 18, 21.) Plaintiff has not shown how Dr. Grant's assessment is inconsistent with the ALJ's conclusions. Furthermore, the record contains two Physical Residual Functional Capacity Assessments from state agency personnel consistent with the ALJ's conclusion that plaintiff could perform the full range of light work.[8] (Tr. 330, 368.)

Plaintiff also contends that the ALJ did not consider pain as a non-exertional limitation in his analysis. (Tr. 7.) But the only evidence that plaintiff points to is Dr. Grant's "impression" of "cervical sprain, chronic"; "lumbar sprain, chronic"; "radiculopathy"; and "median neuropathy, right." (Tr. 320.) Plaintiff does not explain how pain from these conditions "significantly affects claimant's ability to perform the full range of" light work, such that a vocational expert is required. Ortiz, 890 F.2d at 524. Dr. Grant's final assessment, which considers his evaluation as a whole, was simply that there was an impairment of plaintiff's lifting and carrying. (Tr. 320.) Again, plaintiff has not shown how this is inconsistent with the RFC assessments of the state agency personnel and with the ALJ's conclusion that plaintiff can only perform light work now. Dr. Grant provides no specification as to the extent of the impairment, merely indicating that an

---

[6] First, light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Second, light work might also involve "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. The evaluations of Dr. Grant, Dr. Pedroza, and Mr. Acuna are consistent with this second requirement, and plaintiff has not contested this. (Tr. 320, 330, 368.)

[7] Plaintiff also argues that Dr. Grant concluded that plaintiff had hand strength of "0/5," but the ALJ concludes that the doctor actually wrote "5/5." (Docket No. 16, at 9); (Tr. 19, 322.) The ALJ's interpretation is consistent with Dr. Grant's typed notes, which indicate that plaintiff had "5/5" muscle strength in everything except his hips, which were determined to be "4/5." (Tr. 319.)

[8] The first assessment indicates that plaintiff can complete medium work as well. (Tr. 330.)

9

impairment of lifting and carrying exists.[9] (Tr. 320.) The ALJ concludes that plaintiff's previous relevant work required him to lift 50 or more pounds; after incurring the severe impairments of a back disorder and obesity, plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 18, 21.) This reduction in plaintiff's abilities is certainly consistent with the existence of an impairment of lifting and carrying. Thus, there is substantial evidence to support the ALJ's conclusions that plaintiff can perform the full range of light work.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of September, 2012.

s/Marcos E. López<br>
U.S. Magistrate Judge

---

[9] Dr. Grant indicates, however, that plaintiff retains full muscle strength on both hands. (Tr. 319, 322.)